IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CV-565-FL

| | |
|---|---|
| RAYMOND A. RENFROW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM AND |
| ) | RECOMMENDATION |
| FREMONT HOME LOAN TRUST and ) | |
| LITTON LOAN SERVICING, ) | |
| ) | |
| Defendants. ) | |

This matter comes before the court on the motions of Defendants Fremont Home Loan Trust ("Fremont")[1] and Litton Home Loan Servicing ("Litton") (altogether, "Defendants") to dismiss the complaint filed by Plaintiff Raymond Renfrow ("Plaintiff"). [DE-11, -30]. Plaintiff has responded to Defendant Litton's motion. [DE-15]. Defendants' motions have been referred to this court in accordance with 28 U.S.C. § 636(b)(1)(B) and are considered here as a recommendation to the district court. For the reasons stated below it is recommended the Defendants' motions [DE-11, -30] be ALLOWED.

## I. PROCEDURAL BACKGROUND

On August 24, 2012, Defendants Fremont and Litton timely removed this action to federal court from the North Carolina Superior Court of Wilson County in accordance with 28 U.S.C. §§ 1331 and 1332. [DE-1].[2] On September, 21, 2012, in lieu of answering the complaint

---

[1] While the caption of Plaintiff's complaint identifies Defendant as Fremont Home Loan Trust, Plaintiff refers to Defendant as "Fremont Investment & Loan" within the complaint. Compl. [DE-1-1] ¶ 2.

[2] On August 29, 2012, Defendants Fremont and Litton filed an Amended Notice of Removal on the grounds that the original removal notice incorrectly stated that venue was proper

and pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant Litton filed a motion to dismiss the complaint.³ [DE-11]. In support of its motion, Defendant Litton submitted a memorandum of law along with several exhibits. Mem. of Law in Supp. of Defs.' Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6) ("Litton's Mem.") [DE-12]. On October 22, 2012, Plaintiff responded to Defendant Litton's motion. Obj. to Mot. to Dismiss ("Pl.'s Resp.") [DE-15]. On November 8, 2012, the court entered an order staying the issuance of a scheduling order and further case activities, including discovery, except for disclosures required under Fed. R. Civ. P. 26(f), pending the resolution of Defendants' motion. [DE-18]. On March 13, 2013, the court entered an order allowing Defendant Fremont to file an untimely responsive pleading. [DE-29]. On March 15, 2013, in lieu of filing a responsive pleading, Defendant Fremont moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1)

---

in the United States District Court for the Middle District of North Carolina. [DE-1] at 2 n.2; [DE-5] ¶ 4. The original notice of removal sufficiently provides the basis for federal jurisdiction such that the scriveners error does not affect the effectiveness of the timely removal to federal court. *See Strawn v. AT&T Mobility, LLC*, 530 F.3d 293, 296-97 (4th Cir. 2008) (the party seeking removal need only allege federal jurisdiction with a short and plain statement); 28 U.S.C. § 1446(a) (requiring notice of removal to contain a short and plain statement of the grounds for removal).

³ HSBC Bank USA, National Association ("HSBC"), identifying itself as trustee of Fremont Home Loan Trust and as a Defendant in this action, joined in the motion to dismiss filed by Defendant Litton. [DE-11]. HSBC made no appearance in this case prior to the motion to dismiss and Plaintiff has made no allegations against HSBC, jurisdictional or substantive. No motion has been filed to join HSBC as a party to this lawsuit.
 The court held two telephonic conferences with all parties to explore the nature of HSBC's purported relationship with Defendant Fremont and its capacity to move for dismissal of allegations made against Defendant Fremont. Counsel for HSBC advised the court he would submit supplemental briefing following the conference on February 2, 2013 bearing on HSBC's relationship to Fremont. No supplemental briefing was filed. The court is satisfied that the proper parties are before the court . As HSBC is not a party to this lawsuit, the court will not address its purported motion to dismiss.

2

and (b)(6). [DE-30]. In support of its motion, Defendant Fremont has submitted a memorandum of law along with several exhibits. Mem. of Law in Supp. of Def. Fremont Home Loan Trust 2004-B, Asset-Backed Certificates Series 2004-B's Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) ("Fremont's Mem.") [DE-31]. On the same date, the Clerk of Court issued Plaintiff a " Roseboro Letter" advising Plaintiff of his right to respond to Defendant Fremont's motion to dismiss, and the consequences for failing to respond. [DE-32]. Plaintiff has not responded to Defendant Fremont's motion to dismiss.

## II. FACTUAL BACKGROUND

As is proper when considering a motion to dismiss, this court will consider the facts in the light most favorable to Plaintiff. According to the allegations in the complaint and the exhibits attached thereto and to the motion to dismiss, on February 23, 2004, Plaintiff executed a promissory note ("the Note") evidencing a loan in the amount of $100,350.00 from Fremont Investment & Loan secured by a deed of trust on 309 East Nash Street, Elm City, North Carolina ("Subject Property").[4] Compl. [DE-1-1] ¶ 5; Adjustable Rate Note [DE-12-1, -31-1]; Deed of

---

[4] The court may consider matters outside the pleadings when weighing a motion to dismiss for lack of subject-matter jurisdiction. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). In reviewing a Rule 12(b)(6) motion, courts "may properly take judicial notice of matters of public record," and "may also consider documents attached to the complaint, *see* Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic" without converting the motion to dismiss into a motion for summary judgment. *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *accord Feldman v. Law Enforcement Assocs. Corp.*, 779 F. Supp. 2d 472, 486 n.8 (E.D.N.C. 2011) (noting a court may consider on a Rule 12(b)(6) motion "documents appearing in the record of the case, matters of public record, items subject to judicial notice, matters incorporated by reference into the complaint, and exhibits attached to the complaint whose authenticity is unquestioned") (citing 5B Wright & Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004)). Matters of public record, in this context, have been understood to include "copies of pleadings and other materials filed in other courts." *Caldwell Trucking PRP Grp. v. Spaulding Composites Co.*, 890 F. Supp. 1247, 1252 (D.N.J. 1995). Exhibits that

3

Trust [DE-12-2, -31-2]; Aff. of Default & Voluntary Resolution Efforts ("Aff. of Default") [DE-12-4] ¶ 4; Appointment of Substitute Trustee [DE-12-5] at 2; [DE-31-5] at 2. On March 1, 2004, the Deed of Trust was recorded in the Wilson County Register of Deeds. [DE-12-2, -31-2]. Thereafter, Fremont Investment & Loan assigned the Deed of Trust and loan to HSBC. Assignment of Deed of Trust [DE-12-3]; Adjustable Rate Note [DE-12-1] at 6, [DE-31-1] at 6; Aff. of Default [DE-12-4] ¶ 5; Appointment of Substitute Trustee [DE-12-5] at 2. The assignment of the Deed of Trust was recorded in the Wilson County Register of Deeds. [DE-31-3]. Litton provided servicing of the Note. *See* Compl. ¶¶ 6-7. Ultimately, Ocwen Loan Servicing, LLC ("Ocwen") commenced servicing the Note. Aff. of Default [DE-12-4] ¶¶ 1-3.

According to the complaint, on October 16, 2009, by certified mail "Fremont/Litton" received a document from Plaintiff entitled "Constructive Legal Notice of Lawful Debt Validation Demand." Compl. ¶ 8; Constructive Legal Notice of Lawful Debt Validation Demand ("Debt Validation Demand") [DE-1-1] at 10, [DE-5-1] at 10. The Debt Validation Demand indicates that it provides notice to the lender under the authority of the Truth-in-Lending-Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, the Fair Debt Collection Practices Act ("FDCPA"), 15

---

may be incorporated within the pleadings under Rule 10(c) include documents such as affidavits, letters, contracts and loan documentation. *See Eagle Nation, Inc. v. Market Force, Inc.*, 180 F. Supp. 2d 752, 754 (E.D.N.C. 2001).

Accordingly, the court has derived the facts controlling its analysis from Plaintiff's complaint, as well as recorded documents contained in the Wilson County Register of Deeds and state court pleadings from the foreclosure action against Plaintiff attached as exhibits to the motions to dismiss. *See* [DE-12, -31]. Additionally, the complaint's allegations regarding the rights and duties (and alleged breaches thereof) with respect to Plaintiff's mortgage and the foreclosure on his property necessarily rely on the contents of the documents included with the motions to dismiss. Because the contents of these documents are integral to Plaintiff's allegations, the documents may properly be considered by the court in ruling on the motions to dismiss. *See In re FAC Realty Sec. Litig.*, 990 F. Supp. 416, 420 (E.D.N.C. 1997).

4

U.S.C. § 1692c, the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e) and Regulation X of 24 C.F.R. § 3500. Debt Validation Demand [DE-1-1] at 10, [DE-5-1] at 10. The Debt Validation Demand indicates Plaintiff disputes the alleged mortgage debt "for being inaccurate" and Plaintiff believes that he has "had fraud in the factum committed against [him] for lack of full disclosure by the alleged lender." *Id.* Plaintiff complains about "intentional accounting omissions and probable fraud in the factum that took place at the closing in the purchase of [his] home." *Id.* [DE-1-1] at 11, [DE-5-1] at 11. Plaintiff seeks "a clear understanding and clarification [Full Disclosure] of the transactions that occurred at [his] signing of the initial documents, the funding source, legal and beneficial ownership, charges, credits, debits, transactions, reversals, actions, payments, analyses and records related to the servicing of this account from its origination to the present date." *Id.* Plaintiff states that he is "concerned that potential fraudulent and deceptive practices have been committed against [him] in the intentional omission of due consideration in the exchange of [his] promissory note, [his] signing of the mortgage note and security agreement; including deceptive and fraudulent servicing practices to enhance balance sheets; deceptive, abusive and fraudulent accounting tricks." *Id.* Plaintiff demands evidence regarding "the original signed promissory note and an uncertificated or certificated security." *Id.* Plaintiff also demands a "chain of transfer" showing the identity of the current possessor of the mortgage. *Id.* Plaintiff states that if Fremont and/or Litton fail to provide the requested documents, their failure constitutes "positive confirmation" that neither Fremont nor Litton "created or owned a security." *Id.* Plaintiff states that absent evidence of the security he has "no choice but to dispute the validity of [Fremont's and/or Litton's] lawful ownership, funding, entitlement right, and the current debt" allegedly owed by Plaintiff. *Id.*

5

Plaintiff states that to validate the alleged debt he must examine the mortgage from its inception to the present. *Id.* Plaintiff requests that Fremont and/or Litton cease and desist from foreclosure proceedings and refrain from reporting negative credit information to any credit reporting agency. *Id.*

Plaintiff states that "potential abuses" by Fremont and/or Litton "could have deceptively, wrongfully, unlawfully, and/or illegally" increased his monthly payments, principal balance, escrow or interest payments, decreased the payment amounts applicable to loan principal reduction or charged him with fees for which he is not obligated to pay, all associated with his mortgage. Debt Validation Demand [DE-1-1] at 11-12, [DE-5-1] at 11-12. Plaintiff demands that Litton and/or Fremont demonstrate that Plaintiff has "not been the victim of such predatory, fraudulent servicing or lending practices that have occurred throughout the nation." *Id.* [DE-1-1] at 12, [DE-5-1] at 12.

Plaintiff alleges that he wrote a letter to Litton in October 2009 requesting that Litton honor his right to rescind the loan. Compl. ¶ 9. In particular, Plaintiff alleges that according to TILA, Plaintiff is permitted three years to review loan disclosure documents. *Id.* Plaintiff alleges further that a "Three Day Right to Cancel" begins to run when the lender has provided the borrower with all disclosures required under TILA, and that the lender failed to provide him with the required disclosures. *Id.* Litton denied Plaintiff's request to rescind the loan. *Id.* ¶ 10. In a letter dated October 14, 2009, Plaintiff requested Fremont allow him to rescind the loan on the grounds that the "entire purported loan/mortgage process and Deed of Trust" was "obtained by wrongful acts of fraud, fraudulent inducement, concealment, and fraudulent misrepresentation" [DE-1-1] at 25, [DE-5-1] at 25; Compl. ¶ 11. Plaintiff alleges that his request to Fremont to

6

rescind the loan was "to no avail." Compl. ¶ 11.

Plaintiff defaulted on the Note due to nonpayment as of November 1, 2008. Aff. of Default [DE-12-4] ¶ 6, [DE-31-4] ¶ 6. On February 17, 2012, Ocwen, as attorney-in-fact for HSBC, appointed Substitute Trustee Services, Inc., ("STS") as substitute trustee under the deed of trust. Appointment of Substitute Trustee [DE-12-5] at 2, [DE-31-5] at 2. On March 12, 2012, STS filed a Notice of Hearing Prior to Foreclosure of Deed of Trust initiating a power of sale foreclosure on behalf of HSBC. Notice of Hr'g [DE-12-6], [DE-31-6].

On April 17, 2012, the Wilson County Assistant Clerk of Superior Court entered an Order allowing foreclosure of the Subject Property and entered findings, to include, specifically, that HSBC is the holder of the Note. Order [DE-12-7], [DE-31-7]. On May 8, 2012, the Subject Property was sold at a foreclosure sale pursuant to the Order allowing foreclosure after which the last and highest bidder was HSBC. Report of Foreclosure Sale [DE-12-8], [DE-31-8]. The foreclosure sale was confirmed on May 21, 2012. Final Report & Account of Foreclosure Sale [DE-12-9], [DE-31-9]. A Trustee's Deed conveying the property to HSBC was recorded in Book 2488, Page 847 of the Wilson County Registry on June 7, 2012. Trustee's Deed [DE-12-10], [DE-31-10].

On July 17, 2012, Plaintiff filed a Complaint against Freemont Home Loan Trust and Litton Loan Servicing in the General Court of Justice, Superior Court Division for Wilson County, North Carolina. On August 24, 2012, Defendants removed this action to this court. The first purported cause of action is a claim for rescission. In particular, Plaintiff alleges that Defendants denied Plaintiff his statutory and common law right to rescind the 2004 loan transaction. Compl. ¶¶ 13-14. Next, Plaintiff purports to assert a cause of action for replevin.

7

In particular, Plaintiff alleges that Defendants unlawfully and without authority sold Plaintiff's home through a foreclosure auction on May 8, 2012. *Id.* ¶¶ 16-17. Plaintiff alleges he is entitled to retrieve his property from Defendants or, in the alternative, be compensated for the inconvenience of not having free access to his property. *Id.* ¶ 18.

## III. STANDARD OF REVIEW

Defendants have moved to dismiss Plaintiff's complaint on the grounds that (1) this court lacks subject-matter jurisdiction over Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(1) and (2) Plaintiff has failed to state a claim for which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).

Because the existence of subject-matter jurisdiction is a threshold issue, this Court must first address Defendants' motion to dismiss pursuant to Rule 12(b)(1) before addressing the merits of the case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998); *accord Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999). When a defendant challenges subject-matter jurisdiction, "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*; *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

A motion filed under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of a complaint, *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006),

8

measured by whether it meets the standards stated in Rule 8. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). While a complaint need not contain detailed factual allegations, courts require more than labels and conclusions, and a formulaic recitation of the elements of a cause of action is insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (applying Rule 8). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (quoting Fed.R.Civ.P. 8(a)(2) & *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The decisive standard is that the combined allegations, taken as true, must state a "plausible," not merely conceivable, case for relief. *Sepúlveda–Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679-80 (2009) (citations omitted)). To have facial plausibility, the pleading must contain factual content that permits the court, using its "judicial experience and common sense," reasonably to infer the defendant's liability. *Id.*

## IV. DISCUSSION

A. <u>Subject-Matter Jurisdiction as to Plaintiff's Claim of Replevin</u>

In his second cause of action, Plaintiff seeks repossession of his property through an action of replevin. In particular, Plaintiff alleges he is the true owner of his property, that Defendants did not have the authority to sell his property at foreclosure and that he is entitled to his property or just compensation "for not having free access to his property." Compl. ¶¶ 17, 18, 22.

Under the *Rooker–Feldman* doctrine, federal courts lack subject-matter jurisdiction to sit in appellate review of judicial determinations made in state courts. *See District of Columbia*

9

*Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). Jurisdiction to review such decisions lies with superior state courts and, ultimately, the United States Supreme Court. *See* 28 U.S.C. § 1257(a).

The *Rooker–Feldman* bar "extends not only to issues actually presented to and decided by a state court, but also to issues that are 'inextricably intertwined' with questions ruled on by a state court." *Brumby v. Deutsche Bank Nat'l Trust Co.*, No. 1:09-CV-144, 2010 U.S. Dist. LEXIS 13406, at *7, 2010 WL 617368, at* 2, (M.D.N.C. Feb. 17, 2010) (citing *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997)). A federal claim is inextricably intertwined with a state court decision where, "in order to grant the federal plaintiff the relief sought, the federal court must determine that the [state] court judgment was erroneously entered or must take action that would render the judgment ineffectual." *Id.* (quoting *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997); *see also Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995) (noting that *Rooker–Feldman* operates as a bar "if the relief requested in the federal action requires determining that the state court decision is wrong or would void the state court's ruling").

In 2005, the Supreme Court clarified the scope and application of the *Rooker-Feldman* doctrine and held that the jurisdictional limitation is confined to

> cases brought by state-court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. [The *Rooker–Feldman* doctrine does not] stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 293 (2005) (internal quotation marks omitted). "Under *Exxon*, Feldman's 'inextricably intertwined' language does not create an additional legal test for determining when claims challenging a state-court decision are barred, but merely states a conclusion: if the state court loser seeks redress in the federal district court for the injury caused by the state court decision," the claim is considered inextricably intertwined. *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 719 (4th Cir. 2006).

Here, to the extent that Plaintiff's action seeks relief stemming from the foreclosure order entered by the Wilson County Clerk directing the foreclosure sale, such claim is barred by *Rooker–Feldman*. *See Pitts v. U.S. Hous. & Urban Dev.*, No. 5:12-CV-72-D, 2013 U.S. Dist. LEXIS 7976, at *10, 2013 WL 214693, at *3 (E.D.N.C. Jan. 18, 2013) (finding the *Rooker-Feldman* doctrine bars consideration of claims that challenge a North Carolina Clerk of Court's decision in a state foreclosure action); *Radisi v. HSBC Bank USA, Nat'l Ass'n*, No. 5:11-CV-125, 2012 U.S. Dist. LEXIS 81605, at *9, 2012 WL 2155052, at *4 (W.D.N.C. June 13, 2012). Although Plaintiff argues that Defendants lacked the authority to foreclose on his property, the determination of the legitimate holder of Plaintiff's mortgage was precisely what the state court decided and was necessarily encompassed within that decision. *See Radisi*, 2012 U.S. Dist. LEXIS 81605, at *9, 2012 WL 2155052, at *4. Under North Carolina law, foreclosure pursuant to the power of sale requires a hearing before the clerk of superior court to determine four issues: (1) the existence of a valid debt, (2) the existence of a default, (3) the trustee's right to foreclosure, and (4) the sufficiency of notice to the record owners. *Mixon v. Wells Fargo Home Mortg.*, No. 3:12-CV-77-RJC-DLH, 2012 U.S. Dist. LEXIS 52141, at *2, 2012 WL 1247202, at

*2 (W.D.N.C. Apr. 13, 2012) (citing N.C. Gen. Stat. § 45-21.16(d)). North Carolina law specifically provides further that "the act of the clerk in so finding or refusing to find is a judicial act." N.C. Gen. Stat. § 45–21.16(d1). As such, the proper holder of the debt became judicially established by the Clerk's foreclosure order. Plaintiff argues that Defendants committed fraudulent actions before the foreclosure action was ordered, but Plaintiff's opportunity to show fraud came in the state court action. *See Radisi*, 2012 U.S. Dist. LEXIS 81605, at *9, 2012 WL 2155052, at *4 (citing *Dillard v. Bank of N.Y.*, No. 11–1379, 476 F. App'x 690 (10th Cir. 2012) (dismissing a claim of improper documents and deceptive representations in a foreclosure action under the *Rooker–Feldman* doctrine)). Plaintiff had the right to appeal the state court findings within ten days. N.C. Gen. Stat. § 45-21.16(d1). Although Plaintiff states that he filed a complaint in superior court and obtained a temporary restraining order, he did so after the May 8, 2012, foreclosure sale. The effect of entertaining Plaintiff's claims would place this court in appellate review of the state court's judgment of foreclosure. Because ruling in Plaintiff's favor would require this Court to review and reject the order of the state court in the foreclosure action, Plaintiff's claim of replevin is barred by the *Rooker-Feldman* doctrine.

B. Res Judicata

Alternatively, but for similar reasoning, Plaintiff's claim for replevin is barred by the doctrine of *res judicata*. *See Mixon*, 2012 U.S. Dist. LEXIS 52141, at *3-8, 2012 WL 1247202, at *1-3. Upon the finding by the clerk that each element of N.C. Gen. Stat. § 45-21.16(d) as set forth above has been satisfied, the clerk may authorize the trustee under the deed to proceed pursuant to the power of sale contained in the deed. *Id.*, 2012 U.S. Dist. LEXIS 52141, at *5, 2012 WL 1247202, at *2 (citing *Phil Mech. Constr. Co., Inc. v. Haywood*, 325 S.E.2d 1, 3 (N.C.

12

App. 1985)). The "[i]ssues that the clerk of court decides at a foreclosure hearing 'as to the validity of the debt and the trustee's right to foreclose are *res judicata* and cannot be relitigated in an action for strict judicial foreclosure.'" *Id.* (citing *Phil Mech.*, 325 S.E.2d at 3).

C. Plaintiff's Claims Arising Under TILA

Reading the complaint liberally, Plaintiff next purports to assert a claim for rescission of his mortgage loan in accordance with TILA and under the common law. Compl. ¶¶ 13-15, 25(c). The allegations contained in Plaintiff's complaint and attachments thereto indicate that the issues before the court concern whether the alleged non-disclosures and failure to provide the required notice preserved Plaintiff's right to rescind for three years, *see* 15 U.S.C. § 1635(f), and whether Plaintiff has alleged Defendants violated TILA's rescission procedures by failing to adequately respond to Plaintiff's rescission notice. 15 U.S.C. § 1635(b); *see Ward v. Security Atlantic Mortg. Elec. Restoration Sys., Inc.*, 858 F. Supp. 2d 561, 566 (E.D.N.C. 2012).

TILA regulates the relationship between lenders ("Creditors") and borrowers in order to facilitate the "informed use of credit." *See* 15 U.S.C. § 1601(a). TILA requires that creditors make certain disclosures to borrowers, including disclosures of the various costs associated with the loan and the borrower's right to rescind the transaction if the creditor retains a security interest in the borrower's principal dwelling. 15 U.S.C. §§ 1635(a), 1638; *see generally* 15 U.S.C. §§ 1601-1667(f). Under certain circumstances, a borrower may also bring a cause of action for damages against an assignee of a creditor. 15 U.S.C. § 1641(a). Under § 1641(a) only a violation of TILA that is apparent on the face of the instrument is enforceable as against an assignee of the creditor.

TILA defines a "creditor" as "only . . . a person who both (1) regularly extends . . .

13

consumer credit . . . and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement." 15 U.S.C. § 1602(f). The Note identifies "Fremont Investment and Loan" as the lender on the face of the instrument. Adjustable Rate Note [DE-12-1]. Plaintiff alleges Fremont provided the loan to Plaintiff and assigned or sold the Note to Litton. Compl. ¶¶ 5-7. Litton is not a "creditor" according to section 1602(f) because Litton is not "the person to whom the debt arising from [the mortgage loan] [w]as initially payable." *See Woody v. Bank of Am. Corp.*, No. 5:10-CV-86-D, 2010 U.S. Dist. LEXIS 73007, at *8, 2010 WL 2942029, at *3 (E.D.N.C. July 20, 2010) (quoting *Cetto v. LaSalle Bank Nat'l Ass'n*, 518 F.3d 263, 269-73 (4th Cir. 2008)); *see* Adjustable Rate Note [DE-12-1] (identifying "Fremont Investment & Loan" as the initial lender). Accordingly, Plaintiff fails to state a claim under TILA against Defendant Litton. *See Woody*, 2010 U.S. Dist. LEXIS 73007, at *8, 2010 WL 2942029, at *3.

Next, the court considers the viability of Plaintiff's claim to rescind his mortgage under TILA.[5] Under TILA's statute of repose, 15 U.S.C. § 1635(f), an obligor's right to rescind a loan transaction where a creditor has failed to make required disclosures expires "three years after the

---

[5] To the extent Plaintiff's complaint may be construed as seeking damages for alleged disclosure violations under TILA, as opposed to rescission, such a claim must be brought against a creditor or assignee within one year of the date of the occurrence of the alleged violation. 15 U.S.C. § 1640(e); *Ward*, 858 F. Supp. 2d at 569; *Moseley v. Countrywide Home Loans, Inc.*, No. 7:09-CV-210-FL, 2010 U.S. Dist. LEXIS 114164, at *5, 2010 WL 4484566, at *2 (E.D.N.C. Oct. 26, 2010). The "date of the occurrence of the violation" is the date on which the borrower accepts the creditor's extension of credit. *Moseley*, 2010 U.S. Dist. LEXIS 114164, at *5, 2010 WL 4484566, at *2 (citation omitted). In the present case, Plaintiff closed on his loan on February 23, 2004. Compl. ¶ 5. Plaintiff filed suit on July 17, 2012, more than one year after the local closing. Accordingly, the one-year statute of limitations under TILA bars Plaintiff's damages claim for disclosure violations against Defendants. *Ward*, 858 F.Supp.2d at 569.

date of consummation of the transaction or upon the sale of the property, whichever occurs first." 15 U.S.C. § 1635(f); *see Jones v. Saxon Mortg., Inc.*, 537 F.3d 320, 324-27 (4th Cir. 1998); *Bradford v. HSBC Mortg. Corp.*, 799 F.Supp. 2d 625, 630-32 (E.D. Va. 2011) (finding that borrower's failure to file lawsuit within three years of loan closing extinguished his right to rescind under TILA); *Ward*, 858 F. Supp. 2d at 570 (quoting 15 U.S.C. § 1635(f)). Plaintiff alleges his loan closed February 23, 2004, and he filed this action on July 17, 2012, well beyond the repose period.[6] Accordingly, Plaintiff's claim for rescission under TILA is time-barred.

Alternatively, Plaintiff's claim for rescission under TILA fails on the grounds that Plaintiff has failed to allege his ability to tender the loan proceeds back to the lender. In order to rescind the loan under TILA, the consumer must deliver written notice to the creditor of his intent to rescind. 12 C.F.R. § 226.23(a)(2). The consumer must also return the loan amount to the creditor, less any payments, interest and finance charges. *Davis v. Wilmington Fin., Inc.*, No. PJM 09-1505, 2010 U.S. Dist. LEXIS 29263, at *15-16, 2010 WL 1375363, at *5 (D. Md. Mar. 26, 2010) ("[R]ecission is an empty remedy without Plaintiffs' ability to pay back what they have received, minus interest and finance charges.") (citing *Am. Mortg. Network, Inc. v. Shelton*, 486 F.3d 815, 820-21 (4th Cir. 2007)). Here, Plaintiff has failed to allege a claim for rescission under TILA because he has failed to allege his ability to tender the loan proceeds back to the lender. *Moseley*, 2010 U.S. Dist. LEXIS 114164, 2010 WL 4484566 (dismissing Plaintiffs' TILA rescission claim in part because plaintiffs were unable to repay the loans in question); *compare Ward*, 858 F. Supp. 2d at 572-73 (dismissing TILA rescission claim where plaintiff failed to

---

[6] Even if Plaintiff's letter of October 2009 to Defendants were deemed to be his assertion of his right to rescind the loan under TILA, his claim would continue to be untimely, having been sent more than three years after the February 2004 closing of the loan.

15

Case 5:12-cv-00565-FL Document 33 Filed 06/04/13 Page 15 of 17

allege ability to tender the amount of loan to lender but interpreting *Shelton* to stand for the proposition that district courts in the interest of equity and on a case-by-case basis may alter the sequence of rescission procedures under TILA rather than require plaintiffs to allege an affirmative statement of ability to tender loan proceeds to lender in order to survive 12(b)(6) motion); *Benjamin v. Nationwide Lending Corp.*, No. AW-08-2511, 2010 U.S. Dist. LEXIS 13742, at *12, 2010 WL 610768, at *4 (D. Md. Feb. 16, 2010) (denying TILA rescission claim where "Plaintiffs have made no definite offer other than suggesting a short sale, to repay the loans"). Plaintiff has failed to allege his ability to tender the loans proceeds back to the lender, and the foreclosure is further evidence of Plaintiff's failure. Accordingly, Plaintiff has failed to state a cognizable claim for recision under TILA.

Finally, apart from his claims arising under TILA, Plaintiff seeks to assert a common law right to rescind his mortgage. Compl. at 6. Plaintiff's right to rescind his mortgage loan however has been subsumed by the statutory framework of TILA. *See Williams v. Homestake Mortg. Co.*, 968 F.2d 1137, 1140 (11th Cir. 1992) ("The sequence of rescission and tender set forth in § 1635(b) is a reordering of common law rules governing rescission.") (internal quotation marks and citation omitted); *Palmer v. Ameribanq Mortg. Grp., LLC*, No. 05-2023, 2010 U.S. Dist. LEXIS 107340, at *61, 2010 WL 3933273, at *21 (E.D. Pa. Oct. 6, 2010) (observing that the "[r]eordering the common-law rules governing rescission has the twofold effect of placing the borrower in a stronger bargaining position than he would occupy under the common law and serving as 'an important enforcement tool, insuring creditor compliance with TILA's disclosure requirements'") (quoting *Williams*, 968 F.2d at 1140)). Accordingly, Plaintiff's purported common law claim to rescind his mortgage must be dismissed.

## V. CONCLUSION

For the reasons stated above, this court RECOMMENDS Defendants' motions to dismiss [DE-11, -30] be ALLOWED. The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the district court.

Submitted, this the 4th day of June, 2013.

Robert B. Jones, Jr.
United States Magistrate Judge